DARIN B. GOFF (11355)
VANESSA R. WALSH (16180)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, 6th Floor
Salt Lake City, UT 84111
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dgoff@agutah.gov
E-mail: vwalsh@agutah.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| GORDON MARBLE<br><br>Plaintiff,<br><br>v.<br><br>WADE HOVINGA; HAL STOUT; MIKE FOWLKS; PAUL WASHBURN; and JOHN DOES 1-10;<br><br>Defendants. | **DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**<br><br>Case No. 1:19-cv-00064-HCN-CMR<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Cecilia M. Romero |

# TABLE OF CONTENTS

1.   INTRODUCTION AND RELIEF SOUGHT ................................................................. 1

2.   BACKGROUND ........................................................................................................ 3

3.   STATEMENT OF UNDISPUTED FACTS .............................................................. 5

   3.1   The Parties ........................................................................................................ 5

   3.2   The Arrest ......................................................................................................... 6

   3.3   The Transport ................................................................................................. 11

   3.4   The Alleged Injury.......................................................................................... 15

   3.5   DWR Handcuffing Policy .............................................................................. 16

   3.6   Hovinga and Stout's Handcuffing Training .................................................. 16

4.   LEGAL STANDARDS ........................................................................................... 17

   4.1    Summary Judgment Standard........................................................................ 17

   4.2    Qualified Immunity Standard ....................................................................... 18

5. ARGUMENT ............................................................................................................. 20

   5.1   Defendant Hovinga Did Not Personally Participate in Any Constitutional Violation. 20

   5.2   Stout and Hovinga Are Entitled to Summary Judgment on Marble's Deliberate
   Indifference Claims.......................................................................................... 21

      5.2.1. Marble's Deliberate Indifference Claim Arises Under the Fourteenth Amendment.
          21

      5.2.2 The Eighth Amendment Deliberate Indifference Standard ................................... 23

      5.2.3 Marble's Injury Was Not Objectively Serious....................................................... 23

      5.2.4 Defendants Stout and Hovinga Were Not Subjectively Aware of a Substantial Risk
      of Harm. .................................................................................................................. 25

         5.2.4.1   Stout Was Not Subjectively Aware of a Risk .............................. 26

         5.2.4.2   Stout's Response to Any Risk Was Reasonable. .......................... 28

      5.2.5 A Written Policy Alone Cannot Establish Deliberate Indifference ........................ 29

      5.2.6 Neither Stout nor Hovinga Violated Clearly Established Law .............................. 30

5.3     Double-Cuffing Marble Behind the Back Was Objectively Reasonable. .................. 31

5.3.1 Application of the Graham Factors. ......................................................................... 32

5.3.1.1    Stout's Response to Marble's Assertions of Injury Was Reasonable .......... 33

5.3.2  The Policy is Not Relevant to an Excessive Force Claim ..................................... 34

5.3.3  Neither Stout Nor Hovinga Violated Clearly Established Law .............................. 34

5.4     Marble's Supervisor Liability Claims Against Fowlks and Washburn Fail. ............. 35

5.4.1 Neither Fowlks Nor Washburn Violated Clearly Established Law ......................... 37

5.5.     Marble's Official Capacity Claims Fail. .................................................................. 38

6.     CONCLUSION ............................................................................................................ 39

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*A.M. v. Holmes*,
  830 F.3d 1123 (10th Cir. 2016) ............................................................... 31, 34
*Anderson v. Creighton*,
  483 U.S. 635 (1987) ...................................................................................... 18
*Archuleta v. Wagner*,
  523 F.3d 1278 (10th Cir. 2008) ...................................................................... 37
*Ashcroft v. al-Kidd*,
  563 U.S. 731(2011) .................................................................................. 18, 19
Atwater v. City of Lago Vista,
  532 U.S. 318, (2001) ..................................................................................... 31
*Aubrey v. Koppes*,
  975 F.3d 995 (10th Cir. 2020) ....................................................................... 17
*Bame v. Iron Cty.*,
  566 F. App'x 731 (10th Cir. 2014) ................................................................. 29
*Berry v. City of Muskogee, Okl.*,
  900 F.2d 1489 (10th Cir. 1990) ..................................................................... 25
*Brigden v. State ex rel. Oklahoma Dep't of Corr.*,
  129 F.3d 130 (10th Cir. 1997) ........................................................... 25, 26, 27
*Burke v. Regaldo*,
  935 F.3d 960 (10th Cir. 2019) ....................................................................... 19
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................... 17
*Cortez v. McAuley*,
  478 F.3d 1108 (10th Cir. 2007) ................................................................ 31, 32
*Cox v. Glanz*,
  800 F.3d 1231 (10th Cir. 2015) ................................................................ 18, 19
*District of Columbia v. Wesby*,
  138 S. Ct. 577 (2018) .................................................................................... 37
*Edwards v. City of Muskogee, Oklahoma*,
  No. 20-7000, 2021 WL 28533 (10th Cir. Jan. 5, 2021) ............................ passim
*Ellis ex rel. Estate of Ellis v. Ogden City*,
  589 F.3d 1099 (10th Cir. 2009) ..................................................................... 37
*Estate of Booker v. Gomez*,
  745 F.3d 405 (10th Cir. 2014) ....................................................................... 35

*Estate of Ceballos v. Husk,*
 919 F.3d 1204 (10th Cir. 2019) ................................................................ 30
*Farmer v. Brennan,*
 511 U.S. 825 (1994)........................................................................ 24, 25, 27
*Fisher v. City of Las Cruces,*
 584 F.3d 888 (10th Cir. 2009) ..................................................... 21, 29, 31
*Fletcher v. Unified Gov't of Wyandotte Cty., Kansas,*
 No. 19-3128-SAC, 2020 WL 4530479 (D. Kan. Aug. 6, 2020)..................... 23
*Frasier v. Evans,*
 No. 19-1015, 2021 WL 1166405 (10th Cir. March 29, 2021)................... 18, 19
*Gomes v. Wood,*
 451 F.3d 1122 (10th Cir. 2006) ............................................................ 18, 19
*Graham v. Connor,*
 490 U.S. 386, (1989).................................................................................. 30
*Grissom v. Roberts,*
 *et al., 902 F.3d 1162 (10th Cir. 2018)* ........................................................ 30
*Harlow v. Fitzgerald,*
 457 U.S. 800) (1982) ................................................................................. 17
*Henry v. Storey,*
 658 F.3d 1235 (10th Cir. 2011) ................................................................. 20
*Holland ex rel. Overdoff v. Harrington,*
 268 F.3d 1179 (10th Cir. 2001) ................................................................. 20
Hovater v. Robinson,
 1 F.3d 1063 ................................................................................................ 29
*Jensen by Jensen v. Clyde,*
 989 F.3d 848 (10th Cir. 2021) .............................................................. 34, 35
*Jensen v. Kimble,*
 1 F.3d 1073 (10th Cir.1993) ...................................................................... 17
*Keith v. Koerner,*
 707 F.3d 1185 (10th Cir. 2013) ................................................................. 20
*Keith v. Koerner,*
 843 F.3d 833 (10th Cir. 2016) ................................................................... 35
*Kingsley v. Hendrickson,*
 576 U.S. 389 (2015)................................................................................... 32
*Malley v. Briggs,*
 475 U.S. 335 (1986)................................................................................... 19
*Marquez v. City of Albuquerque,*
 399 F.3d 1216 (10th Cir.2005) .................................................................. 33
*McCowan v. Morales,*
 945 F.3d 1276 (10th Cir. 2019) ........................................................... 22, 30
*Medina v. Cram,*
 252 F.3d 1124 (10th Cir. 2001) ................................................................. 18

*Mglej v. Gardner,*
  974 F.3d 1151 (10th Cir. 2020) ............................................. 30, 31, 32, 34
*Mink v. Knox,*
  613 F.3d 995 (10th Cir. 2010) ................................................................. 20
*Morreale v. City of Cripple Creek,*
  1997 WL 290976 (10th Cir. 1997) .......................................................... 33
*Mullenix v. Luna,*
  136 S. Ct. 305 (2015) ............................................................................... 19
*Pearson v. Callahan,*
  555 U.S. 223 (2009) ........................................................................... 17, 18
*Perry v. Duborow,*
  892 F.3d 1116 (10th Cir. 2018) ..................................................... 20, 21, 34
*Porro v. Barnes,*
  624 F.3d 1322 (10th Cir. 2010) ............................................................... 35
*Ramos v. Lamm,*
  639 F.2d 559 (10th Cir. 1980) ................................................................. 25
*Redmond v. Crowther,*
  882 F.3d 927 (10th Cir. 2018) ................................................................... 5
*Rivera v. Granillo,*
  No. 20-1133, 2021 WL 628343 (10th Cir. Feb. 18, 2021) ................... 27, 28
*Ross v. The Bd. of Regents of The Univ. of New Mexico,*
  599 F.3d 1114 (10th Cir. 2010) ............................................................... 37
*Saucier v. Katz,*
  533 U.S. 194 (2001) ................................................................................. 18
*Schneider v. City of Grand Junction Police Dept.,*
  717 F.3d 760 .......................................................................................... 35
*Self v. Crum,*
  439 F.3d 1227 (10th Cir. 2006) ............................................................... 25
*Serna v. Colorado Dep't of Corr.,*
  455 F.3d 1146 (10th Cir. 2006) ............................................................... 34
*Spencer v. Abbott,*
  731 F. App'x 731 (10th Cir. Dec. 5, 2017) .............................................. 18
*Strain v. Relgado,*
  977 F.3d 984 (10th Cir. 2020) ........................................................... 22, 23
Tanberg v. Sholtis,
  401 F.3d 1151 (10th Cir.2005) ................................................................ 33
*Ullery v. Bradley,*
  949 F.3d 1282 (10th Cir. 2020) ......................................................... 17, 37
*Whitley v. Albers,*
  475 U.S. 312 (1986) ................................................................................. 25
*Will v. Michigan Dep't of State Police,*
  491 U.S. 58 (1989) .................................................................................. 37

*Wilson v. Seiter,*
    501 U.S, 294 (1991) ................................................................................ 25
*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) ........................................................................... 18

## Statutes

Utah Code Ann. § 23-13-2(51) ................................................................... 8
Utah Code Ann. § 23-20-4(3)(a)(ii) ........................................................... 8

## Rules

Fed. R. Civ. P. 56(a) ................................................................................... 17
Fed. R. Civ. P. 56(c)(1)(A)–(B) ................................................................. 17
Federal Rule of Civil Procedure 56 ...................................................... 1, 16

## Other Authorities

2012 WL 628343 ................................................................................. 32, 33
DUCivR 56-1 ............................................................................................... 1

Pursuant to Federal Rule of Civil Procedure 56 and DUCivR 56-1, Defendants Wade Hovinga, Hal Stout, Mike Fowlks, and Paul Washburn, through counsel, Darin B. Goff and Vanessa R. Walsh, Assistant Utah Attorneys General, hereby move for summary judgment on all claims in Plaintiff's Amended Complaint and Jury Demand (Complaint).[1]

## 1.      INTRODUCTION AND RELIEF SOUGHT

Marble's Complaint raises claims related to being handcuffed during the drive to jail following his felony arrest for poaching a deer. Specifically, Marble claims that he suffered a **left shoulder injury** while riding in Stout's truck and claims that the injury was caused by being double-handcuffed[2] behind his back. Marble's Complaint asserts: (1) A deliberate indifference to serious medical needs claim against Stout and Hovinga for handcuffing Marble behind the back;[3] (2) an excessive force claim against Defendants Stout and Hovinga for handcuffing him behind the back;[4] and (3) supervisor liability claims against Fowlks and Washburn for failure to train and/or unconstitutional practices. Marble asserts his claims against Defendants in both their individual and official capacities. Defendants seek summary judgment and dismissal of Marble's claims against them, with prejudice. The basis for Defendants' motion is as follows:

- Marble's claims against Hovinga fail because there is no affirmative link between Hovinga and a constitutional violation.
  - Hovinga was unaware of Marble's alleged shoulder injury;

---

[1] Plaintiff's Amended Complaint (Compl.), (Doc. 5), attached as Exhibit A

[2] As discussed below, "double-handcuffed", "double-cuffed" or "double-cuffing" refers to being handcuffed with two sets of handcuffs linked together to lengthen the handcuffs.

[3] Marble characterizes this claim as both a deliberate indifference claim and a "Fourth Amendment" violation. Ex. A, Compl. ¶¶ 77, 85. As discussed below, denial of medical care claims for detainees is brought pursuant to the Fourteenth Amendment and are analyzed under the same deliberate indifference standard as inmate claims for denial of medical care under the Eighth Amendment.

[4] Ex. A, Compl., ¶¶ 39, 85, 98-99, 101.

- o Hovinga did not participate in handcuffing Marble; and
  - o Hovinga was not present while Stout drove Marble to jail.

- Marble's deliberate indifference claims fail because:
  - o Marble's injuries during transport were not objectively serious.
    - ▪ Marble's injuries had not been diagnosed by a physician; and
    - ▪ Marble's injuries were not so obvious that a layperson would have recognized that Marble required medical care.
  - o Hovinga and Stout were not subjectively aware of a substantial risk of harm because:
    - ▪ Marble did not communicate that double-cuffing behind his back would aggravate his shoulder injury; and
    - ▪ When Marble experienced discomfort during the drive to jail, he declined Stout's reasonable offers of aid.

- Marble's excessive force claims fail because double-handcuffing Marble for the ride to jail was objectively reasonable:
  - o Marble was arrested for a felony;
  - o Marble's presence in the front seat of Stout's vehicle in proximity to vehicle controls and weapons presented a threat to Stout's safety;
  - o Double-cuffing Marble behind his back was reasonable in light of the risk of flight or resistance present during transport to the jail; and
  - o Stout responded reasonably to Marble's communications regarding his shoulder pain, including double-cuffing and offering to stop to let Marble stretch, offers that Marble declined.

- Marble's supervisor liability claims fail because:
  - o None of Fowlks or Washburn's subordinates violated Marble's constitutional rights; and
  - o There is no affirmative link between Fowlks or Washburn and the alleged constitutional violation:
    - ▪ There was no failure to train or unspoken policy of disregarding Division of Wildlife Resources ("DWR") handcuffing policy;
    - ▪ Neither Fowlks nor Washburn caused Marble's injuries; and
    - ▪ Neither Fowlks nor Washburn acted with the requisite state of mind.

- Marble's official capacity claims fail because:
  - o Claims against individuals in their official capacities are claims against the State; and
  - o The State is not a person for the purposes of 18 U.S.C. §1983.

2.      **BACKGROUND**

In the fall of 2016, DWR received a report of illegal deer hunting on an enclosed private elk hunting ranch near Kanab. On October 22, 2016, Stout, a DWR investigator, conducted a day-long surveillance of the ranch from a hillside overlooking the property. Stout saw Marble, his son, John Marble, and the ranch owner hunting on the ranch property. Late in the afternoon, Stout saw the hunting party go behind a hill in an ATV. Stout then heard two gunshots originating from behind the hill. Later, Stout saw the hunting party driving back towards the ranch lodge in the ATV. Marble and John Marble then lifted two buck deer carcasses from the ATV into the back of a pickup truck. Stout notified Hovinga and asked him to wait at the ranch exit to stop the pickup truck and then drove to that location from his observation point.

When Stout arrived at the ranch exit, Hovinga reported that Marble had shot the larger of the two deer. Charles Lawrence, a DWR enforcement officer, measured the antlers of the larger deer as 26.5 inches wide, a trophy deer, making Marble's offense a felony. Stout arrested Marble for felony poaching. Lawrence, prepared to handcuff Marble. Marble then told Lawrence that he had an injury to his right rotator cuff. In response, Stout gave Lawrence a second set of handcuffs so Lawrence could double-cuff Marble behind his back. Lawrence asked Marble if the double-cuffs were comfortable, and Marble responded "yeah." Lawrence made certain the cuffs were not too tight and Marble confirmed they were not.

After placing Marble in handcuffs, Stout and Lawrence helped Marble to Stout's pickup truck for transportation to the Kane County Jail (the Jail). Marble told Stout he would be in pain, and Stout asked if he was okay. Marble then said he was "good."  Stout told Marble he could

adjust the seat and sit however he needed for comfort. The drive lasted 45 minutes on a paved road. During the drive Marble conversed casually with Stout about hunting on the ranch, hunting generally, and other matters. Approximately 25 minutes into the drive, Marble complained of pain in his right shoulder. Stout offered to stop and allow Marble to stretch. Marble declined. Thirty-two minutes into the drive, Stout asked about Marble's pain and again offered to stop and let Marble stretch. Marble again, did not accept this offer. Forty minutes into the drive, Marble again expressed discomfort but did not ask Stout to stop. Stout told him they were almost at their destination. Approximately forty-one minutes into the drive, Marble told Stout that he hurt his right elbow on the armrest. Stout immediately asked him if he was okay, and Marble said he was "ready to be out of here." Stout and Marble arrived at the Jail two minutes later, where Marble was booked into jail.

Marble did not seek medical treatment for his right shoulder for five months. In March 2017, he saw Dr. Dee, who diagnosed a right rotator cuff tear. Twelve days after receiving the diagnosis, Marble called Washburn and complained that being handcuffed behind his back injured his right shoulder during the ride to the Jail. **Marble did not mention any left shoulder pain or injury**. Marble did not seek medical treatment for his left shoulder until April, 2017 when Dr. Dee diagnosed a torn left shoulder rotator cuff.

In this lawsuit, Marble contends he should have been handcuffed with his hands in front during the drive to the Jail, or not at all. [5]

---

[5] Ex. A, Compl. ¶¶ 98-99.

3.      **STATEMENT OF UNDISPUTED FACTS**[6]

    **3.1     The Parties**

1. Hal Stout is an investigator for the Division of Wildlife Resources ("DWR").[7]

2. Wade Hovinga is a captain of the investigation section of DWR".[8]

3. Chuck Lawrence, who is not a defendant in this case, is a conservation officer for DWR.[9]

4. Mike Fowlks is the director for DWR and supervises the law enforcement section.[10]

5. Mike Fowlks has never directly supervised Stout or Hovinga.[11]

6. Mike Fowlks does not oversee training.[12]

7. Mike Fowlks was not at the scene of the arrest.[13]

8. Paul Washburn is a lieutenant for DWR.[14]

9.  Washburn supervises Stout. He does not supervise Hovinga.[15]

10. Washburn does not develop or conduct DWR training.[16]

---

[6] In determining whether qualified immunity applies, a Court ordinarily accepts the plaintiff's version of alleged facts. *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018). Those "facts must find support in the record." *Id.* If the plaintiff's version of the facts is contradicted by the record, so that no reasonable jury could believe it, the Court should not adopt that version of the facts." *Id.* To any extent testimony contradicted the facts in the audio recording of Marble's arrest, the Court can rely on the audio recording of the encounter, the transcript of that encounter, and the officers' reports. *Edwards v. City of Muskogee, Oklahoma,* No. 20-7000, 2021 WL 28533, at *1 (10th Cir. Jan. 5, 2021).

[7] Stout Deposition, attached as Exhibit B, 5:24-25.

[8] Hovinga Deposition, attached as Exhibit D, 6:1-7.

[9] Crime Report, attached at Exhibit C, p. 4

[10] Fowlks Deposition, attached as Exhibit G, 5:16-17.

[11] Ex. G, Fowlks Dep., 5:21-24.

[12] *Id.*, 5:15-25; 12:7-11.

[13] *Id.*, 8:24-9:2.

[14] Washburn Deposition, attached as Exhibit H, 5:5-6.

[15] *Id.*, 5:4-6; 5:14-18.

[16] *Id.*, 39:14-24.

11. Washburn was not at the scene of the arrest.[17]

12. Washburn's only interaction with Marble was a phone conversation on March 29, 2017, when Marble called him to complain about his arrest.[18]

13. Gordon Marble is a partial owner of Marble Ventures, a company that fabricates and installs natural stone products, including granite and marble, which can weigh up to 1,000 lbs.[19] Marble worked 50-60 hours a week in his role as owner and was involved in all facets of the business, including hands-on lifting of granite and marble stone, and installation training.[20]

### 3.2   The Arrest[21]

14. On October 22, 2016, Gordon and John Marble were hunting on a family member's privately-owned high-fence elk ranch owned by a family member.[22]

15.  Stout surveilled Marble, John Marble, and a family member hunting on the ranch throughout the day.[23]  Late that afternoon the hunting party drove in an ATV behind a hill that obscured Stout's view.[24]

16. Between 17:40 and 18:20 hours, Stout heard two gunshots coming from the point he had last observed the hunting party.[25]

---

[17] *Id*., 10: 21-23.
[18] *Id*., 10:11-18; Washburn Notes, attached as Exhibit F.
[19] Marble Deposition, attached as Exhibit I, 65:17-66:17.
[20] Ex. I, Marble Dep. 67:11-69:15.
[21] Stout made an audio recording of his interaction with Marble. *See* Declaration of Hal Stout attached as Exhibit Q; Stout Audio filed as Exhibit R; and, Stout Audio Transcript, attached as Exhibit S.
[22] Ex. I, Marble Dep., 15:9-12; 18:2-20:24; Ex. R, Stout Audio at 34:42 and 37:55; Ex. S, Transcript, 25:10-11; 27:19-20:19.
[23] Ex. B, Stout Dep, 8:20-10:9; Ex. C, Crime Report, p. 4.
[24] Ex. C, Crime Report, p. 4.
[25] *Id*.

17.  At 19:10 hours, he saw the hunting party return to the ranch lodge in the ATV. There were two mature mule deer bucks in the bed of the ATV.[26]

18. Marble and John Marble lifted the deer into the bed of Marble's truck.[27]

19. At Stout's request, Hovinga was waiting by the exit of the private property to stop the vehicle as it left the ranch.[28]

20. When the vehicle left the ranch, Hovinga pulled behind and stopped it.[29]

21. Lawrence was nearby and assisted Hovinga in the stop.[30]

22. Marble and John Marble were the only occupants in the truck.[31]

23. The bed of the truck contained two large mule deer bucks.[32]

24. Hovinga interviewed Marble for approximately 25-30 minutes about the deer and the illegal hunt.[33]

25. Marble told Hovinga that he shot the larger of the two deer and John Marble shot the smaller.[34]

26. When Stout arrived, Hovinga briefed him on Marble's interview and then interviewed John Marble.[35]

---

[26] *Id*.
[27] *Id*.
[28] Ex. B, Stout Dep., 10:13-11:16, Ex. D, Hovinga Dep. 9:19-10:3.
[29] Ex. C, Crime Report, page 8; Ex. D, Hovinga Dep., 11:3-6.
[30] Ex. C, Crime Report, page 8.
[31] Ex. I, Marble Dep., 15:3-7.
[32] Ex. I, Marble Dep., 26:14-27:18; Photo attached as Exhibit J.
[33] Ex. D, Hovinga Dep., 14:13-20.
[34] Ex. C, Crime Report, p. 5.
[35] Ex. D, Hovinga Dep., 14:13-20; 15:13-21; Ex. I, Marble Dep., 31:1-12; Ex. R, Stout Audio, 1:42, Ex. S, Transcript, 1:8-4:8.

27. Lawrence took an outside antler measurement on the larger mule deer that Marble shot.[36] The outside antler measurement was approximately 26.5 inches.[37]

28. Utah law defines a "trophy animal" to include "deer—a buck with an outside antler measurement of 24 inches or greater[38] and Utah's poaching statute classifies poaching of "trophy animals" as a felony.[39]

29. After being briefed by Hovinga, Stout arrested Marble for wanton destruction of Protected Wildlife, a third-degree felony, and advised that he would be transported to the Kane County Jail.[40]

30. Marble asked Stout and Lawrence to arrest him away from the road.[41]  Stout and Lawrence accommodated his request.[42]

31. As Lawrence was placing Marble in handcuffs the following conversation occurred:

> "LAWRENCE:        Okay.  Can I just have you interlock your fingers and place them on the back of your head for me.
>
> STOUT:            You do want this jacket, though?
>
> MARBLE:           Yeah.
>
> LAWRENCE:         Widen your stance for me. I don't want you falling over. A little wider. Okay. Look to your left. And for your safety (inaudible), okay? Okay. Bring this elbow back.
>
> MARBLE:           Just don't hurt me, whatever you do.

---

[36] Ex. C, Crime Report, p.5; Ex. Q, Stout Decl., ¶ 10.
[37] Ex. C, Crime Report, p.4.
[38] Utah Code Ann. § 23-13-2(51).
[39] Utah Code Ann. § 23-20-4(3)(a)(ii).
[40] Ex. B, Stout Dep., 15:21-24; Ex. R, Stout Audio, 22:15; Ex. S, Transcript,14:3-5.
[41] Ex. I, Marble Dep., 32:19-24; Ex. R, Stout Audio, 22:36. Ex. S, Transcript, 14:10-13.
[42] *Id.,* Ex. R, Stout Audio, 22:36; Ex. S, Transcript, 14:10-13.

| LAWRENCE: | I'm doing -- I'm going to be soft. |
|---|---|
| MARBLE: | I'm a good guy.  Yes, I've got a rotator cuff that's the right shoulder. |
| LAWRENCE: | Okay.  Well -- that's a sore rotator cuff? |
| MARBLE: | Okay.  You can feel it.  I'm not - I'm not joshing you. |
| LAWRENCE: | No, I believe you. |
| MARBLE: | So that hurts right there pretty bad on the right, so . . ."[43] |

32. Hearing the conversation, Stout gave Lawrence a second set of handcuffs, and Lawrence linked the two sets of cuffs together to double-cuff Marble with his hands behind his back and told him the extra cuffs would "give him more mobility".[44]

33. After double-cuffing Marble, Lawrence asked him if that was more comfortable. Marble responded, "yeah".[45]  Lawrence also asked him if it "felt more comfortable with tightness." Marble responded laughing, "I've never had them before so I don't know."[46] Lawrence asked him about tightness again and Marble gave no indication the cuffs were too tight.[47]

34. Stout and Lawrence escorted Marble to Stout's duty vehicle, a two-door pickup truck.[48]

35. Once at the truck, Marble told Stout, "I'm going to be in a lot of pain".[49] Stout asked him if he was okay and told him he could adjust the seat and sit however he wanted.[50] Marble

---

[43] Ex. S, Transcript, 17:1-7; Ex. R, Stout Audio, 23:58.
[44] Ex. B, Stout Dep., 17:17-18:1; Ex. I, Marble Dep., 38:18-20; Ex. R, Stout Audio, 25:00; Ex. S, Transcript, 17:8-9.
[45] Ex. R, Stout Audio, 25:01; Ex. S, Transcript, 17:11-13.
[46] Ex. R, Stout Audio, 25:20; Ex. S, Transcript, 17:16-22.
[47] Ex. R, Stout Audio, 25:30; Ex. S, Transcript, 17: 22-25.
[48] Ex. R, Stout Audio, 25:40; Ex. S, Transcript, 18:23-25.
[49] Ex. R, Stout Audio, 26:38; Ex. S, Transcript,18:15-16.
[50] Ex. R, Stout Audio, 26:44; Ex. S, Transcript, 18:17-22.

responded, "no, I'm good."[51]

36. Other than the initial interview he conducted with Marble, Hovinga did not interact with

Marble. Hovinga testified in his deposition as follows:

"Q.   Who took over, for lack of a better word, handling Gordon Marble while you
       were talking to John Marble?

A:    It would be either Officer Chuck Lawrence or Investigator Hal Stout or both."[52]

* * * * *

"Q:   Did you ever tell Gordon Marble that it was DWR policy to handcuff in the back?

A:    No."[53]

* * * * *

"Q:   Do you know who placed Marble in handcuffs?

A:    I don't know that for sure.

Q:    You weren't around at that time or were you talking to John at that time when
       Gordon was placed in handcuffs?

A:    I wasn't around at that time. I was with John [Marble]."[54]

* * * * *

"Q:   Are you aware if Marble could have his hands physically joined behind his back?

A:    I'm not aware.[55]

* * * * *

---

[51] Ex. R, Stout Audio, 26:55; Ex. S., Transcript, 18:22.
[52] Ex. D, Hovinga Dep., 15:13-17.
[53] *Id*., 16:6-8.
[54] *Id*., 16:15-20.
[55] *Id*., 20:4-7.

"Q:     Did you ever feel like you had discretion to change the position of Marble's handcuffs?

A:      No, I wasn't. I was removed from him through that whole time."[56]

\* \* \* \* \*

"Q:     Did you ever help to load Gordon Marble in or out of the vehicles?

A:      No."[57]

\* \* \* \* \*

"Q:     And do you have any personal knowledge as to any of the facts stated in this document?[58]

A:      No, because I wasn't involved in the handcuffing and arrest of Gordon Marble."[59]

37. Marble never told Hovinga that he had a shoulder injury of any kind."[60]

### 3.3     The Transport

38. Stout drove Marble to the Jail with Marble in the front passenger seat. During the drive, Marble was seated in close proximity to Stout's firearms and other potential weapons and the vehicle controls.[61]  The trip lasted approximately 45 minutes.[62]

39.  A docile and cooperative arrested person may become aggressive violent or attempt self-harm when the person recognizes that the arrest will lead to incarceration.[63]  Officers have no

---

[56] *Id*., 20:20-23.
[57] *Id*., 22:4-6.
[58] Hovinga was shown Washburn's notes concerning his conversation with Marble. *See* Ex. F, Washburn Notes.
[59] Ex. D, Hovinga Dep., 31:18-21.
[60] Ex. D, Hovinga Dep., 19:5-20; 23:25-24:7.
[61] Response to Interrogatory. No. 11, attached as Exhibit P.
[62] Ex. B, Stout Dep., 22:14-18; Ex. R, Stout Audio.
[63] Ken Wallentine Report attached as Exhibit N, p. 4.

reliably consistent and foolproof predictor of aggressive behavior.[64]

40. The road was a paved highway.[65]  Stout did not drive erratically or recklessly.[66]

41. Marble and Stout conversed casually for the first twenty-five minutes of the drive.[67]

Approximately 25 minutes into the drive, the following conversation took place:

> "MARBLE:     Are we almost there?
>
> STOUT:        No. We're –
>
> MARBLE:     Oh, jeez. My right shoulder -- I hope it's not –
>
> STOUT:        You're hurting, huh?
>
> MARBLE:     It's a torn rotator cuff.
>
> STOUT:        Oh, miserable.
>
> MARBLE:     I've got to get it operated on, but this is making it worse, I can tell.
>
> STOUT:        We're probably about 15 minutes out. Are you going to make it?
>
> MARBLE:     Do I have a choice?
>
> STOUT:        Well, we -- if you're in –
>
> MARBLE:     No.
>
> STOUT:        serious shape, we can stop and let you stretch or something.
>
> MARBLE:     I don't want to be re-cuffed. Once is enough in my life. Never thought this
>                     would happen, ever."[68]

42. Approximately 7 minutes later (32 minutes into the drive):

---

[64] Ken Wallentine Rebuttal Report attached as Exhibit O, p. 1.
[65] Ex. B, Stout Dep., 22:14-18; Ex. I, Marble Dep. 42:10-11.
[66] Ex. I, Marble Dep., 42:25-43:1.
[67] Ex. R, Stout Audio, 28:52.
[68] Ex. R, Stout Audio, 54:24; Ex. S, Transcript, 42:16-43:10.

"STOUT:  Okay.  Are you doing all right?

MARBLE:  No.

STOUT:  Relatively?

MARBLE:  No.  I'm hurting bad.

STOUT:  Let me know if we need to stop and we can let you stretch.

MARBLE:  Is that Kanab right here?

STOUT:  Yeah.

MARBLE:  If I could just get the left arm -- I can't -- okay.

STOUT:  I know that's miserable. I --I've spent a lot of time in cuffs in training, and it's just

MARBLE:  It's not the cuffs that are hurting.

STOUT:  It's your rotator cuff?

MARBLE:  Yeah, yeah. Well, I guess it is the cuff that's hurting. "[69]

43. Approximately 8 minutes later (40 minutes into the drive):

"STOUT:  Hurting pretty bad?

MARBLE:  Yeah, yeah.

STOUT:  We are almost there. Get you situated.

MARBLE:  I'm sorry. I'm normally not a big baby –

STOUT:  No.

MARBLE:  but man alive, I'm dying.

---

[69] Ex. R, Stout Audio, 1:02:21; Ex. S, Transcript, 47:13-48:6.

Marble v. Hovinga et al. Case No. 1:19-cv-00064-HCN
Motion for Summary Judgment
13

STOUT:          Yeah. We're -- that – that's it right there, so ...   Let's see -- I think I's this one."[70]

44. Approximately one minute later:

"MARBLE:       ooh.

STOUT:          Are you okay?

MARBLE:        No, no. I hit that armrest on that left -- or right elbow and just -- okay. I'm ready to be out of here. I don't care where you put me, just

STOUT:          Yeah, get you -- get you situated, huh? Oh, that must have been the sally port back there."[71]

45. Two minutes later, Stout and Marble arrived at the Jail and Marble got out of the truck and was booked into the Jail.[72]

46. Stout did not know Marble injured his left shoulder during the encounter.[73]  Marble never told Stout his left shoulder was injured or hurting.[74]

47. Stout recorded the audio of his entire interaction with Marble beginning with Stout's arrival at the ranch exit through their arrival at the Jail.[75]

---

[70] Ex. R, Stout Audio, 1:10:27; Ex. S, Transcript, 50:11-20.
[71] Ex. R, Stout Audio, 1:11:09; Ex. S, Transcript, 50:22-51:1.
[72] Ex. I, Marble Dep., 48:2-14; Ex. R, Stout Audio, 1:12:36; Ex. S, Transcript, 51:9-22.
[73] Ex. B. Stout Dep., 44:11-22.
[74] Ex. B, Stout Dep., 32:9-11; 46:11-22; Ex. R, Stout Audio, 1:11:09; Ex. S, Transcript, 50:22-51:5.
[75] Ex. Q, Stout Decl., ¶¶ 7-9.

### 3.4    The Alleged Injury

48. Marble had a pre-existing right shoulder injury he believed could only have been work-related because he works installing natural stone and granite.[76]

49. Marble's right shoulder injury was not diagnosed by a physician or treated prior to his arrest.[77]

50. Three weeks after his arrest, he had a routine physical and did not mention any shoulder injuries or pain. [78]

51. Marble did not seek any medical care for his right shoulder for five months.[79]  On March 17, 2017, when Dr. Dee diagnosed him with a right rotator cuff tear. [80] According to the notes from that doctor visit Marble did not tell Dr. Dee about any left shoulder pain or injury. [81]

52.  Twelve days after being diagnosed with the right rotator cuff tear, Marble called Washburn and complained his right shoulder was injured while being transported to the Jail. [82] Marble did not tell Washburn about any left shoulder pain or left shoulder injury.[83]

53. On April 14, 2017, Marble called his physical therapist and told her he was no longer having pain in his right shoulder however was now having pain in his left shoulder.[84]

54. Dr. Dee subsequently diagnosed a left rotator cuff tear.[85]

---

[76] Ex. I, Marble Dep., 11:20-12:12.
[77] *Id*., 13:6-17.
[78] November 9, 2016 Medical Notes attached as Exhibit M.
[79]  March 15, 2017 Medical Notes attached as Exhibit K, p.1.
[80] *Id.* p. 4.
[81] *Id.* pp. 1-4.
[82] Ex. F, Washburn Notes; Ex. H, Washburn Dep., 41:17-22.
[83] Ex. F, Washburn Notes.
[84] April 2017 Medical Notes, attached as Exhibit L, p. 1.
[85] *Id.* p. 4.

55. Marble eventually had surgery on both shoulders to repair the tears.[86]

56. Marble only seeks damages for the injury to his left shoulder.[87]

### 3.5    DWR Handcuffing Policy

57. DWR has a handcuffing policy (the Policy) intended to provide law enforcement with guidelines for the transportation of all persons taken into custody to ensure the safety of the officers, the public, and the person being transported.[88]

58. The Policy states officers shall handcuff all prisoners with their hands behind their back, but states that officers "may" handcuff in the front in limited situations.[89] Those instances are when the prisoner: Is in an obvious state of pregnancy.

> (a) Has a physical handicap.
> (b) Has injuries that could be aggravated.
> (c) Must be transported a considerable distance over rough roads.
> (e) Has arms that cannot be physically joined in the back.
> (f) Persons known to the officer to be non-threatening.

> In those instances, the handcuffs shall be secured with a belt, with the buckle located to the rear, or other restraint devices.[90]

59.  Washburn reviewed Marble's complaints regarding his handcuffing and concluded that double-cuffing Marble behind the back did not violate the Policy.[91]

### 3.6    Hovinga and Stout's Handcuffing Training

60.  Stout received training on use of force, defensive tactics and DWR's handcuffing

---

[86] Ex. I, Marble Dep, 50:6-11.
[87] *Id.*
[88] The Policy, attached as Exhibit E, p.1.
[89] Ex. E, the Policy, p.2.
[90] *Id*.
[91] Ex. H, Washburn Dep., 35:1-6.

policy.[92]

61. Hovinga received training on use of force, defensive tactics, and DWR's handcuffing policy.[93]

### 4.  LEGAL STANDARDS

#### 4.1  Summary Judgment Standard

Defendants' summary-judgment motion is governed by Federal Rule of Civil Procedure 56. Summary judgment shall be granted to the moving party when the record shows "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Aubrey v. Koppes*, 975 F.3d 995, 1004 (10th Cir. 2020). Defendants have the initial burden to establish the absence of material fact to support the non-moving party's claims. *Jensen v. Kimble*, 1 F.3d 1073, 1076 (10th Cir.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In so doing, they may cite to particular parts of materials in the record supporting the fact or may show that the cited materials "do not establish the absence ... of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Once a defendant has met that threshold, the burden then shifts to the plaintiff to demonstrate a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In responding to the motion, a plaintiff may not rely on the bare allegations from his complaint, but rather must "designate specific facts showing there is a genuine issue for trial." *Id.* (quotations omitted). If the non-movant fails to meet his burden as to one element of a claim, summary judgment is appropriate on that claim. *Id.* at 323.

---

[92] Ex. B, Stout Dep., 18:2-10; Ex. P. Resp. to Interrog. No. 8; Ex. Q, Stout Decl., ¶ 13.
[93] Ex. D, Hovinga Dep., 16:21-17:2; Ex. P., Resp. to Interrog. No. 8.

### 4.2    Qualified Immunity Standard

Defendants also raise the defense of qualified immunity. Qualified immunity shields government officials who perform discretionary functions from § 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818) (1982)). It protects "all but the plainly incompetent or those who knowingly violate the law." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (citations and quotations omitted).

The assertion of qualified immunity also modifies the review of summary-judgment motions. By asserting qualified immunity, a defendant creates a rebuttable presumption that he is immune from the plaintiff's § 1983 claims. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). And rather than "focus[ing] on the existence of genuine disputes of material fact," the court must "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* questions before the court." *Spencer v. Abbott*, 731 F. App'x 731, 373 n.6 (10th Cir. Dec. 5, 2017) (quoting *Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015) (further citations and quotations omitted)) (unpublished).

Two elements exist in the qualified immunity analysis—first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right, and second, "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct...." *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Thus, if "at the time of the challenged conduct, the contours of a right are sufficiently clear that

every reasonable official would have understood that what he is doing violates the right," the official is not qualifiedly immune. *Ashcroft v. al-Kidd*, 563 U.S. 731 at 741(2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). But if an official "might not have known *for certain* that [their] conduct was unlawful[,] then the [official] is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (emphasis added).

The Tenth Circuit has held that a defendant's eligibility for qualified immunity is judged by an objective standard. *Frasier v. Evans* No. 19-1015, 2021 WL 1166405, at *7 (10th Cir. March 29, 2021). It may be denied only if, on an objective basis, it is obvious that no reasonably competent [official] would have concluded that the actions were constitutional. *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). But "'if [officials] of reasonable competence could disagree' about the lawfulness of the challenged conduct, then '[qualified] immunity should be recognized.'" *Id.* at 1136 (alteration in original) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A defendant's motion for summary judgment based on qualified immunity imposes on the plaintiff a heavy two-part burden of showing (1) a violation of a constitutional right and (2) that the right at issue was clearly established at the time of the defendant's alleged misconduct. *Burke v. Regaldo,* 935 F.3d 960, 1002 (10th Cir. 2019).

"For the law to be clearly established, [t]he contours of" the constitutional right at issue must be sufficiently clear that *every* reasonable official would understand that what he is doing violates that right." *Frasier v. Evans*, No. 19-1015, 2021 WL 1166405, at *6 (10th Cir. Mar. 29, 2021) **(**quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)*)*. A plaintiff only satisfies this requirement when he "(1) identif[ies] an on-point Supreme Court or published Tenth Circuit

decision, or (2) shows the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (internal quotation marks omitted). The Supreme Court has repeatedly held that courts should not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotations omitted). Rather, the dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* "Judicial decisions are the only valid interpretive source on the content of clearly established law." *Frasier v. Evans*, No. 19-1015, 2021 WL 1166405, at *16 (10th Cir. Mar. 29, 2021). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Holland ex rel. Overdoff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

## 5. ARGUMENT

### 5.1    Defendant Hovinga Did Not Personally Participate in Any Constitutional Violation.

"[Section] 1983 imposes liability *for a defendant's own actions*." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) (emphasis added). Section 1983 requires an "affirmative link" between a defendant's acts and the alleged constitutional violation. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013). A plaintiff must produce some evidence or specific factual allegations showing that each individual defendant was personally responsible for the activity at issue. *Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010). To satisfy the affirmative link requirement, Plaintiffs must identify sufficient facts to show the official's "(1) personal involvement; (2) causation, and (3) state of mind." *See Perry v. Duborow*, 892 F.3d 1116, 1121

(10th Cir. 2018) (plaintiff was required to establish an affirmative link between sheriff and sexual assault by jail guard).

Hovinga did not personally participate in any violation of Marble's constitutional rights. Hovinga interviewed Marble for approximately 25-30 minutes about the deer and the illegal hunt.[94] Marble said nothing of a shoulder injury during the interview.[95]  When Stout arrived, Hovinga briefed him on the interview and then began to interview John Marble.[96] Hovinga did not: (1) arrest Marble;[97] (2) handcuff Marble;[98] (3) hear Marble tell Lawrence or Stout about his rotator cuff;[99] or (4) drive Marble to jail.[100] Hovinga did not know that Marble had any issues with his shoulder.[101] Hovinga's lack of involvement in Marble's arrest, handcuffing, and transportation to the Jail also precludes any determination that his conduct caused Marble's injuries or that he possessed the requisite state of mind for liability. Accordingly, Hovinga is entitled to summary judgment and the dismissal of Marble's claims against him.

### 5.2    Stout and Hovinga Are Entitled to Summary Judgment on Marble's Deliberate Indifference Claims.

#### 5.2.1.  Marble's Deliberate Indifference Claim Arises Under the Fourteenth Amendment.

As a preliminary matter, Marble's Complaint is ambiguous as to the legal theory on

---

[94] Ex. D, Hovinga Dep., 14:11-20;15:13-17.
[95] Ex. D, Hovinga Dep., 19:5-20; Ex. I, Marble Dep., 77:23-78:3.
[96] Ex. D, Hovinga Dep., 14:13-20; 15:13-21; Ex. I, Marble Dep., 31:1-12; Ex. R, Stout Audio, 1:42, Ex. S, Transcript, 1:8-4:8.
[97] Ex. I, Marble Dep., 30:5-9; Ex. D, Hovinga Dep., 16:15-20.
[98] *Id.*
[99] Ex. D, Hovinga Dep., 19:11-20.
[100] *Id.*, 22:7-9.
[101] *Id.*, 19:11-20.

which he bases his First Cause of Action.[102]  Marble alleges "deliberate indifference to his physical and medical needs" when the officers handcuffed him behind his back but then characterizes the claim as a Fourth Amendment violation subject to an objective reasonableness standard.[103]  He then cites *Fisher v. City of Las Cruces*, 584 F.3d 888, 890 (10th Cir. 2009) for the proposition that handcuffing an arrestee where the officer knew that the arrestee "had an injured arm" and the officer believed that the arrestee posed no threat to the officer" constitutes an **excessive force claim**. *Id*. at ¶ 79 (quoting *Fisher*, 584 F.3d at 901). Thus, to the extent that Marble asserts claims related to being double-cuffed behind his back at the time of his arrest, those claims are properly analyzed as excessive force claims and are addressed below.

The Tenth Circuit has recognized that an arrestee's claims alleging a denial of medical care **after** a warrantless arrest arise under the Fourteenth Amendment. *McCowan v. Morales*, 945 F.3d 1276, 1290 (10th Cir. 2019). An arrestee's rights to medical care under the Fourteenth Amendment are the same as a convicted prisoner's rights under the Eighth Amendment. *Id. See also*, *Strain v. Relgado*, 977 F.3d 984, 993 (10th Cir. 2020) (applying Eighth Amendment deliberate indifference standard, as opposed to objective reasonableness standard, to pretrial detainee's claims for denial of medical care). To succeed on this claim, Marble must show, "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 989. Marble's Complaint alleges facts related to his condition after his arrest and during the drive to jail, and, if read liberally, imply he is claiming an Fourteenth Amendment deliberate

---

[102] Ex. A, Compl., ¶¶ 76-88.

[103] *Id*., ¶¶ 77-78, 82, 85.

indifference violation.[104]  Defendants thus, in an abundance of caution, address this potential

claim.

### 5.2.2   The Eighth Amendment Deliberate Indifference Standard

The deliberate indifference standard includes both an objective and a subjective

component. *Id.*  "To establish the objective component, "the alleged deprivation must be

'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id.* at 989-990

(citations and quotations omitted). "A medical need is [objectively] serious if it is one that has

been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention."  *Id.* at 990 (citations and

quotations omitted). "The subjective component requires Plaintiff to establish that [the] official

knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and [s]he must also draw the inference." *Id.* (citations and quotations omitted). Marble's

claim fails on both prongs.

### 5.2.3   Marble's Injury Was Not Objectively Serious

Marble's alleged injuries fail to satisfy the first prong of the deliberate indifference

standard as they were neither diagnosed by a physician nor obvious to a layperson. Marble

believed his **right rotator cuff** was torn prior to his arrest, and that this injury was a work-

related injury because he works in natural stone and granite and there was "no other occurrence

that it might have happened."[105] This injury had not been diagnosed by a physician at the time of

---

[104] *Id.*, ¶¶ 76-88.
[105] Ex. I, Marble Dep., 11:20-12:25.

his arrest,[106] and in fact, was not diagnosed by a physician until five months later.[107] More importantly, his left shoulder injury, the one he claims was injured as a result of his arrest, remained undiagnosed for six months.[108]  These diagnoses, months later, do not affect the determination of whether the injury was objectively serious at the time of the arrest. *Fletcher v. Unified Gov't of Wyandotte Cty., Kansas,* No. 19-3128-SAC, 2020 WL 4530479, at *1 (D. Kan. Aug. 6, 2020) (unpublished) (plaintiff failed to state a deliberate indifference claim related to a fractured rib where injury was not diagnosed until months after the arrest).

Further, Marble's alleged injuries would not have been obvious to a layperson. Marble acknowledged the second set of cuffs were more comfortable,[109] told Stout he was "good" after adjusting his seat to alleviate discomfort when they left for the jail,[110] and then declined two offers to stop to relieve his discomfort from the handcuffs.[111]  Stout had also spent the day watching Marble hunt deer, standing while riding in back of an ATV, driving an ATV, carrying a rifle, and lifting two large deer into a pickup truck[112]—all activities suggesting Marble was able-bodied and not suffering from a serious orthopedic injury. Marble did not tell Stout about a left shoulder injury at any point during the drive to the Jail.[113]  Further underscoring the lack of obviousness of Marble's injuries is the fact that Marble did not seek medical treatment for either

---

[106] *Id.* at 12:19-24; 51:11-16.
[107] Ex. K, March 15, 2017 Medical Notes, p. 4.
[108] Ex. I, Marble Dep., 51:11-16; 54:25-55:3; Ex. K, March 15, 2017 Medical Notes; Ex. L, April 2017 Medical Notes, p. 4.
[109] Ex. R, Stout Audio, 25:01; Ex. S, Transcript, 17:11-25.
[110] Ex. R, Stout Audio, 26:38; Ex. S, Transcript,18:15-22.
[111] Ex. R, Stout Audio, 54:54; 1:02:22; Ex. S, Transcript, 42:16-43:10; 47:13-48:6.
[112] Ex. C, Crime Report, p. 4.
[113] Ex. B, Stout Dep., 32:9-11; 46:11-22; Ex. R, Stout Audio, 1:11:10; Ex. S, Transcript, 50:22-51:5.

shoulder upon his release from the Jail.[114]  Nor did he mention his shoulder injuries during a physical three weeks after his arrest.[115] Instead, he waited months to seek treatment.[116] Viewed objectively, the facts do not demonstrate a physical injury so obvious that a layperson would understand the need for medical intervention.

### 5.2.4   Defendants Stout and Hovinga Were Not Subjectively Aware of a Substantial Risk of Harm.

The subjective prong requires the plaintiff to show that an officer was consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it …." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The subjective component is akin to "recklessness in the criminal law," where, to act recklessly, a "person must 'consciously disregard' a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). "Accidental or inadvertent failure to provide adequate medical care . . . do[es] not constitute a medical wrong under the Eighth Amendment. *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980) Officers are not responsible for harm a plaintiff may have suffered in general and after the fact, in that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S, 294, 297 (1991). A finding of deliberate indifference "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Berry v. City of Muskogee, Okl*., 900 F.2d 1489, 1495 (10th Cir. 1990) (quoting *Whitley v. Albers*, 475 U.S. 312,

---

[114] Ex. I, Marble Dep., 48:17-49:25; 51:11-16.
[115] Ex. M, November 9, 2016 Medical Notes.
[116] Ex. I, Marble Dep., 51:11-16; 54:25-55:3; Ex. K, March 15, 2017 Medical Notes; Ex. L, April 2017 Medical Notes, p.1.

319 (1986).

### 5.2.4.1        Stout Was Not Subjectively Aware of a Risk

A detainee's own actions are relevant as to the state of mind of the defendants as to their own culpability. *Brigden v. State ex rel. Oklahoma Dep't of Corr.,* 129 F.3d 130 (10th Cir. 1997) (unpublished). In *Brigden*, the plaintiff, an inmate at a state prison, was placed in protective custody upon his arrival. *Id.* When the prison closed the protective custody unit, prison staff interviewed him and gave him the option of remaining in protective custody by transferring to another prison or staying and transferring to general population. *Id.* at 2. Plaintiff chose to stay. *Id.* After complaining he was being intimidated, prison officials offered to move him to a different pod for protection. *Id.* at 3. He declined in writing acknowledging protection was offered. *Id.* Shortly thereafter, the plaintiff was stabbed to death in his cell. *Id.* Upholding the district court's ruling that the plaintiff had failed to satisfy the objective prong of the deliberate indifference standard, the court opined that "no one could have had a more intimate interest in assessing threats to [plaintiff's] safety than [plaintiff] himself" and found that the inmates own view of his safety was "at least be one factor to consider in evaluating whether or not prison officials were subjectively criminally reckless in perceiving an unreasonable risk to [plaintiff], in actually drawing the inference, and in failing to act." *Id.* at 7.

In this case, Marble's own words and conduct prevented the officers from drawing the inference that double-cuffing Marble behind his back for the drive to jail presented a serious risk of substantial harm. As discussed above, Stout's impression of Marble's physical condition was informed in part by spending the entire day watching Marble amble over the ranch hunting deer

and loading dead deer into a pickup truck.[117]  The earliest indication that Marble had a medical condition was at the point where he was arrested and told Lawrence he had a sore right shoulder and mentioned the word "rotator cuff."[118] Lawrence then placed Marble in double-cuffs and asked him if he was more comfortable, to which Marble responded, "yeah."[119] Stout heard this exchange.[120]  Marble confirmed that adjusting his seat alleviated his pain.[121] Stout had no way to know that driving Marble to the Jail while double-cuffed behind his back placed him at risk of a further shoulder injury. Marble did not complain of discomfort until 25 minutes into the drive.[122] His next complaint was not until seven minutes later.[123] Both times Stout offered him an opportunity to stop and stretch, offers that Marble unambiguously declined. In addition, Marble never informed Stout he injured his left shoulder, suspected his left rotator cuff was torn, or that his left shoulder was causing him pain.[124] Stout acknowledged Marble's discomfort and asked him if he was okay.[125] Marble told Stout that he had bumped the armrest but did not indicate he could not continue.[126] Instead he simply stated, "I'm ready to be out of here."[127] On these facts, Marble cannot establish that Stout was aware of and consciously disregarded a substantial risk of serious harm.

---

[117] Ex. C, Crime Report, p. 4.
[118] Ex. R, Stout Audio, 24:35; Ex. S, Transcript, 16:23-24.
[119] Ex. R, Stout Audio, 25:05; Ex. S, Transcript, 17:11-13.
[120] *Id.*
[121] Ex. R, Stout Audio, 26:10; Ex. S, Transcript, 18:17-22.
[122] Ex. R, Stout Audio, 54:24; Ex. S, Transcript, 42:16-43:10.
[123] Ex. R, Stout Audio, 1:02:22; Ex. S, Transcript, 47:13-48:6.
[124] Ex. B, Stout Dep., 46:11-16; Ex. R, Stout Audio, 1:11:09; Ex. S, Transcript, 50:22-51:1.
[125] Ex. R, Stout Audio, 1:11:09; Ex. S, Transcript, 50:22-51:1.
[126] *Id.*
[127] *Id.*

### 5.2.4.2       Stout's Response to Any Risk Was Reasonable.

Even if Stout was aware of a risk to Marble's shoulders, his response to Marble's

complaints was reasonable. Where an officer knew of the risk but took reasonable action to avert

it, even if unsuccessful, he cannot be found to have acted with deliberate indifference. *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994). In *Rivera v. Granillo*, No. 20-1133, 2021 WL 628343 (10th

Cir. Feb. 18, 2021) (unpublished), the Tenth Circuit addressed the reasonableness of an officer's

conduct in response to a complaint regarding tight handcuffs in the context of an excessive force

claim under the Fourth Amendment. In *Rivera,* an officer handcuffed plaintiff at 11:43 pm,

ensured the cuffs were not too tight, and then placed plaintiff in his patrol car. *Id*. at *4. Plaintiff

sat by himself in the patrol car for approximately thirty minutes. *Id.* When the officer returned,

plaintiff complained to him, in a conversational manner, about pain from the cuffs. *Id*. at *5.

Rather than remove them, the officer "started going fast" to reach the station sooner. *Id*. The

drive took approximately 12 minutes. *Id.* The Court held that because (1) plaintiff  "did not

complain ... until [the officer] got back into the patrol car and put the car into gear to go to the ...

substation" (2) plaintiff "made his complaint in a conversational manner" and (3) the officer

"started going fast when [he] complained, the officer "did not ignore a complaint that the

handcuffs were too tight." *Rivera v. Granillo,* No. 20-1133, 2021 WL 628343, at *5 (10th Cir.

Feb. 18, 2021) (cleaned up).

While the officer in *Rivera* acted reasonably by simply hurrying to the police station,

Stout took multiple steps to address Marble's shoulder, including:  (1) double-cuffing Marble to

afford him greater mobility;[128] (2) allowing Marble to adjust the seat;[129] (3) offering more than

once to stop and let Marble out of the truck to stretch (which Marble unambiguously refused);[130]

(4) inquiring multiple times as to Marble's well-being;[131] and, (5) acknowledging Marble's

expressed wish to get to the Jail as quickly as possible and get out of the handcuffs.[132]  Whether

in combination or alone, Stout's actions were more than reasonable. Marble cannot establish that

Stout was deliberately indifferent to his alleged shoulder problems or that Stout's response to his

complaints was unreasonable. The court should grant Stout summary judgment on Marble's

deliberate indifference claims and dismiss them.

### 5.2.5 A Written Policy Alone Cannot Establish Deliberate Indifference

Marble alleges that Stout and Hovinga violated "multiple sections of DWR's policies on

handcuffing certain persons behind the back . . ." and in doing so were deliberately indifferent to

Marble's medical needs.[133] A failure to follow policies alone does not necessarily imply acts of

deliberate indifference. *Bame v. Iron Cty.,* 566 F. App'x 731, 739 (10th Cir. 2014); Hovater v.

Robinson, 1 F.3d 1063, 1068 n. 4 (10th Cir.1993) ("[A] failure to adhere to administrative

regulations does not equate to a constitutional violation."). This is especially true where there is

no evidence an officer knew or should have known a violation of a policy would result in

significant harm. *Bame v. Iron Cty.,* 566 F. App'x 731, 739 (10th Cir. 2014). Setting aside the

---

[128] Ex. B, Stout Dep., 17:17-18:1; Ex. I, Marble Dep., 38:18-20.
[129] Ex. R, Stout Audio, 26:10; Ex. S, Transcript, 18:2-23.
[130] Ex. R, Stout Audio, 54:24; 1:02:22; Ex. S, Transcript, 42:18-43:10; 47:13-48:6.
[131] *Id;* Ex. S, Transcript, 50:11-20; Ex. R, Stout Audio, 1:10:30; 1:11:09; Ex. I, Marble Dep., 58:15-21.
[132] Ex R, Stout Audio, 1:11:09; Ex. S, Transcript, 50:13-51:5.
[133] Ex. A, Compl., ¶ 83.

fact that the Policy affords the arresting officer with discretion to handcuff in front, or not, a violation[134] of the Policy does not establish deliberate indifference.

### 5.2.6   Neither Stout nor Hovinga Violated Clearly Established Law

Marble bears the burden of establishing the body of case law puts the unlawfulness of Stout and Hovinga's conduct beyond debate. Marble cites *Fisher v. City of Las Cruces*, 584 F.3d 888 at 890-901 (10th Cir. 2009) to support the proposition an arrestee has a Fourth Amendment Constitutional right not to be handcuffed in a manner that poses a serious risk of exacerbating a preexisting injury. [135]   The issue in *Fisher*, however, is not whether the officers were deliberately indifferent. Rather, *Fisher* is concerned with whether officers used excessive force on a detainee when the officer placed a knee in the back of a suspect with a visibly bleeding gunshot to the stomach to handcuff him. The court noted, "[w]e hasten to add this might be a very different case if the officers had no knowledge of Fisher's injuries or handcuffed him in front of his body." *Id.* at 896. *Fisher* does not establish that the officers, in this case, violated Marble's Fourteenth Amendment rights by double-cuffing him behind his back and driving him to jail when he was apparently able to be transported in that fashion and refused offers of aid. Further, the suggestion that the officers violated clearly established law is substantially undone by the Tenth Circuit's opinion in *Rivera* where the officer responded to the arrestee's complaints regarding handcuffs

---

[134] Washburn specifically reviewed Marble's complaint and concluded that double-cuffing him behind the back did not violate the policy. Ex. H, Washburn Dep., 35:1-6.
[135] Ex. A, Compl., ¶ 79.

by hurrying to the jail. *Rivera,* WL 628343, at * 5.[136]  Marble and Stout are entitled to qualified immunity on Marble's deliberate indifference claim.

### 5.3     Double-Cuffing Marble Behind the Back Was Objectively Reasonable.

A Fourth Amendment excessive-force claim is governed by a purely objective standard. *McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019). "A police officer violates an arrestee's ... Fourth Amendment right to be free from excessive force during an arrest if the officer's actions were not 'objectively reasonable' in light of the facts and circumstances confronting him." *Estate of Ceballos v. Husk,,* 919 F.3d 1204, 1213 (10th Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 396, (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Mglej v. Gardner*, 974 F.3d 1151, 1167 (10th Cir. 2020) (quoting *Graham*, 490 U.S. at 396). When conducting this balancing, courts consider "three non-exclusive factors." *Id.* The factors are: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Fisher*, 584 F.3d at 894). Handcuffing incident to a lawful arrest is generally accepted to not constitute excessive force. *See A.M. v. Holmes*, 830 F.3d 1123, 1155 (10th Cir.

---

[136] While *Rivera* is unpublished, it is highly persuasive authority for the proposition that Stout's response to Marble's complaints regarding his shoulder did not violate clearly established law. *See Grissom v. Roberts, et al., 902 F.3d 1162, 1168 (10th Cir. 2018)* (unpublished opinion provides little support for the notion that the law is clearly established, but "can be quite relevant in showing that the law was not clearly established").

2016) (citing *Atwater v. City of Lago Vista,* 532 U.S. 318, (2001)). Indeed, the Tenth Circuit has specifically noted, "in nearly every situation where an arrest is authorized ... handcuffing is appropriate." *Fisher,* 584 F.3d at 896. The Tenth Circuit, however, has recognized Fourth Amendment excessive force claims can arise when non de minimis injury is specifically caused by the application of the cuffs **and** an officer "ignore[s]… timely complaints (or was otherwise made aware)" that the handcuffs were causing injury. *Cortez v. McAuley,* 478 F.3d 1108, 1129 (10th Cir. 2007).

### 5.3.1 Application of the Graham Factors.

The application of the *Graham* factors to the facts, in this case, shows that the force applied in double-cuffing Marble was not excessive. First, Stout arrested Marble for a felony. Although minor non-violent offenses clearly weigh against the objective need to use much force against an arrestee, a felony generally tilts the first *Graham* factor against the arrestee. *Edwards v. City of Muskogee, Oklahoma,* No. 20-7000, 2021 WL 28533, at *5 (10th Cir. Jan. 5, 2021); *Smith v. Wampler,* 108 Fed.Appx. 560, 565 (10th Cir.2004) (unpublished). Second, Marble presented an officer safety concern while Stout drove him to the jail. Handcuffing is an appropriate response to officer-safety concerns. *Muehler v. Mena,* 544 U.S. 93, 100 (2005).  Marble was seated in the front seat of Stout's vehicle in close proximity to weapons (including the handcuffs), vehicle controls, and Stout himself.[137]  Marble's docility while being questioned prior to his arrest does not mean he posed no threat to officer safety during transport. Finally, "officers have no reliably consistent and foolproof predictor of aggressive behavior."[138]

---

[137] Ex. P., Resp. to Interrog. 11.
[138] Ex. O, Wallentine Rebuttal, p. 1; Ex. B, Stout Dep., 13:18-23.

A cooperative arrested person "may become aggressive, violent, or attempt self-harm when the person recognizes that the arrest will lead to incarceration."[139] The *Graham* factors weigh heavily in favor of Stout's double-cuffing Marble behind the back for the drive to the jail.

### 5.3.1.1   Stout's Response to Marble's Assertions of Injury Was Reasonable

Because Stout was justified in handcuffing Marble for the drive to jail, the question turns to whether Stout's response to Marble's articulation of his shoulder issues was objectively reasonable. *Cortez*, 478 F.3d at 1129. As discussed above, the Graham factors are "non-exclusive." *Mglej*, 974 F.3d at 1167. Further, the Supreme Court has held that a determination of objective reasonableness may include an assessment of "any effort made by the officer to temper or to limit the amount of force." *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015).

As discussed above, in *Rivera* the Tenth Circuit found that it was objectively reasonable for an officer to respond to an arrestee's conversational complaint of pain caused by tight handcuffs by hurrying to the police station. 2012 WL 628343 at *4. As in *Rivera*, Stout did not ignore Marble's complaints but took multiple steps to provide him with aid, including double-cuffing Marble (which Marble acknowledged was acceptable)[140] and offering to let Marble out of the vehicle to stretch on multiple occasions.[141]  As counseled by *Rivera*, "it was reasonable as a matter of law for [Stout ]" to offer Marble an opportunity to stretch and then continue "the relatively short amount of time" [ ] to the jail "before removing the cuffs." *Id. See also Morreale v. City of Cripple Creek*, 1997 WL 290976 * 5 (10th Cir. 1997) (handcuffing arrestee who

---

[139] Ex. N, Wallentine Report, p. 4.
[140] Ex. R, Stout Audio, 25:01; Ex. S, Transcript, 17:11-13.
[141] Ex. R, Stout Audio, 54:24; 1:02:22; Ex. S, Transcript, 42:16-43:10; 47:13-48:6.

complained of a prior shoulder injury behind the back was not unreasonable where force applied

in handcuffing was not substantial or abusive and officer took steps to assure the handcuffs were

not too tight). Stout's decision to honor Marble's request to keep going and get him to the jail so

he could remove the handcuffs was objectively reasonable and does not constitute excessive

force. The Court should grant Stout's motion for summary judgment and dismiss Marble's

excessive force claims against him.

### 5.3.2    The Policy is Not Relevant to an Excessive Force Claim

Marble erroneously focuses his Complaint on alleged violations of the Policy.[142]

Regardless of whether a discretionary policy existed, it is irrelevant to Marble's excessive force

claim. The violation of police operating procedures is insufficient to ground a § 1983 claim

for excessive force under the Fourth Amendment. *Tanberg v. Sholtis,* 401 F.3d 1151, 1163 (10th

Cir.2005) (an arrest that violates police department procedures does not make it more or less

likely that the arrest implicates the Fourth Amendment); *Marquez v. City of Albuquerque,* 399

F.3d 1216, 1222 (10th Cir.2005) (stating that "violations of state law and police procedure

generally do not give rise to a § 1983 claim for excessive force.")

### 5.3.3    Neither Stout Nor Hovinga Violated Clearly Established Law

To the extent that Marble claims a right not to have been handcuffed at all, the Tenth

Circuit has recently concluded otherwise. *Mglev*, 974 F.3d 1151 at 1166. *See also A.M. v.

Holmes*, 830 F.3d 1123, 1138 (10th Cir. 2016) (argument that arrestee's status as a minor negated

arresting officer's "customary right to place an arrestee in handcuffs during the arrest" was not

---

[142] Ex. A, Compl, ¶¶ 34, 65, 83, 109

clearly established.). Further, Marble bears the burden of showing that double-cuffing him

behind the back for the drive to jail violated a clearly established right. Because there was no

right to not be handcuffed at all, and in light of *Rivera*, Marble cannot establish that Defendants

violated a clearly established right and Marble and Stout are entitled to qualified immunity.

### 5.4        Marble's Supervisor Liability Claims Against Fowlks and Washburn Fail.

To establish a §1983 claim against a supervisor, "a plaintiff must first show that the

supervisor's subordinates violated the constitution." *Serna v. Colorado Dep't of Corr.*, 455 F.3d

1146, 1151 (10th Cir. 2006). Once an underlying violation is established, the plaintiff must

demonstrate an affirmative link between the supervisor and the violation, "namely the active

participation or acquiescence of the supervisor in the constitutional violation by the

subordinates." *Id.* Thus, to prevail on a § 1983 supervisor liability claim, the plaintiff must meet

the same affirmative link requirements that are required of all § 1983 defendants, namely the

supervisor's "(1) personal involvement; (2) causation, and (3) state of mind." *Perry*, 892 F.3d at

1121. A plaintiff can establish personal involvement by a supervisor by showing that the

supervisor "created, promulgated, implemented, or had responsibility over" an allegedly infirm

policy. *Id. Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848, 858 (10th Cir. 2021). Personal

participation can also be demonstrated by "a 'complete failure to train' or such 'reckless or

grossly negligent' training that makes misconduct nearly inevitable." *Id.* (quoting  *Keith v.

Koerner*, 843 F.3d 833, 838 (10th Cir. 2016). To establish causation, the plaintiff must show that

the supervisor "set in motion a series of events that the defendant knew or reasonably should

have known would cause others to deprive the plaintiff of [his] constitutional rights." *Keith*, 843

F.3d at 847. The state of mind that is required for supervisor liability "depends on the type of claim a plaintiff brings," *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760,. 769 (10th Cir. 2013), but "'can be no less than the mens rea required' of the subordinates to commit the underlying constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 434 (10th Cir. 2014) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)).

Pursuant to these standards, Marble cannot establish a supervisor liability claim against either Fowlks or Marble. First, Marble's claims against Hovinga and Stout fail and the lack of a constitutional violation by a subordinate dooms Marble's supervisor liability claim.

Second, Marble cannot establish that Fowlks or Washburn personally participated in the alleged violation. Neither Fowlks nor Washburn was present at Marble's arrest.[143] Fowlks did not supervise either Hovinga or Stout,[144] and did not oversee law enforcement training for DWR investigators and field officers. [145] Washburn did supervise Stout, but not Hovinga, and similar to Fowlks, did not oversee law enforcement training for DWR employees.[146] Further, Marble cannot establish that Fowlks or Washburn were aware of any unofficial practice of ignoring the the Policy (or that such a practice existed). Finally, Stout and Hovinga were trained on handcuffing and the Policy,[147] and this is not a circumstance where there was a complete failure to train or training that was so deficient as to make Marble's injury inevitable.

Third, Marble cannot establish causation. Again, neither Fowlks nor Washburn were in a

---

[143] Ex. H, Washburn Dep., 10:21-23; Ex. G, Fowlks Dep., 8:24-9:2.
[144] Ex. G, Fowlks Dep., 5:21-24.
[145] *Id.*, 12:7-11.
[146] Ex. H, Washburn Dep., 5:14-18; 17:6-16; Ex. G, Fowlks Dep., 12:7-10
[147] Ex. P, Resp. to Interrog. No. 8; Ex. B, Stout Dep., 18:2-14; Ex. D, Hovinga Dep., 16:21-17:2; 19:1-4.

professional position to assess the adequacy of the Policy or training on it. Fowlks is not certified to train officers on handcuffing techniques or policies, nor did he oversee handcuffing training.[148] Washburn does not develop DWR handcuffing policies or provide training on them.[149] Neither Fowlks nor Washburn "set in motion" the requisite events that they "knew or reasonably should have known" would lead to constitutional violations committed by their subordinates.

Finally, Marble cannot establish either Fowlks or Washburn possessed the requisite state of mind to support a supervisor liability claim. There is no evidence in the record that suggests a deliberate and knowing indifference on the part of either Fowlks or Washburn to the need to train DWR officers on handcuffing or to intervene and disavow a policy or practice of ignoring DWR handcuffing policy. Indeed, neither Fowlks nor Washburn had heard of an arrestee suffering injury as a result of being handcuffed behind the back.[150]   Summary judgment is appropriate on Marble's Third Cause of Action and these claims against Fowlks and Washburn should be dismissed.

### 5.4.1 Neither Fowlks Nor Washburn Violated Clearly Established Law

Marble bears the burden of establishing the body of case law puts the unlawfulness of Fowlks and Washburn's conduct beyond debate. To meet his burden, he will need to identify precedent, either from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits that would inform a reasonable supervisor that not training or addressing an

---

[148] Ex. G, Fowlks Dep., 11:11-14; 12:7-11.
[149] Ex. H, Washburn Dep., 39:18-24.
[150] Ex. H, Washburn Dep., 27:17-20; Ex. G, Fowlks Dep., 21:2-4.

unofficial practice under the circumstances here violated the constitution. *Archuleta v. Wagner,* 523 F.3d 1278, 1283 (10th Cir. 2008) (marks omitted); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (conduct must be prohibited "in *the particular circumstances* before him") (emphasis added); *Ullery v. Bradley*, 949 F.3d 1282 (10th Cir. 2020) (conduct must be "materially analogous" to the allegations at issue). Because he cannot meet this burden, Fowlks and Washburn are entitled to qualified immunity and summary judgment on Marble's claims against them.

### 5.5.    Marble's Official Capacity Claims Fail

Marble sues Defendants in both their "individual and official capacities."[151] Marble's official capacity claims are not cognizable because state officials sued in their official capacity cannot be sued for damages under § 1983. Section 1983 provides a claim for relief against "any person who, under color of state law, deprives another of rights protected by the Constitution." *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009) (emphasis added). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id*. at 66. *See also Ross v. The Bd. of Regents of The Univ. of New Mexico*, 599 F.3d 1114, 1117 (10th Cir. 2010) (finding that the plaintiff who named agencies of the state and state employees in their official capacities "failed to state a constitutional claim upon which relief can

---

[151] Ex. A, Compl., ¶ 9.

be granted."). Because none of the defendants, in their official capacity, are "persons" for purposes of a § 1983 claim, any official capacity claims must be dismissed.

## 6.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment should be granted, and Marble's claims dismissed with prejudice.

DATED: April 19, 2021.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ *Vanessa R. Walsh*
VANESSA R. WALSH
DARIN GOFF
Assistant Utah Attorney General
*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 19, 2021, I electronically served the foregoing, **DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT** on all parties via the court's CM/ECF e-filing
system. I also certify that according to the Court's docket all parties are represented by Counsel
and all parties were served via their respective addresses listed below.

Robert B. Sykes
SYKES MCALLISTER LAW OFFICES
bob@sykesmcallisterlaw.com
*Counsel for Plaintiff*

C. Peter Sorensen
SYKES MCALLISTER LAW OFFICES
pete@sykesmcallisterlaw.com
*Counsel for Plaintiff*

/s/ *Mindy D. Fowler*